SAMUEL, Judge.
The executrix of this succession filed a final tableau of distribution and sought its homologation. One of the decedent’s three children, Grace Marion Drumm Lawson, opposed the homologation of the tableau insofar as it attempted to give effect to a legacy of $14,000 to each of the decedent’s other two children, Carol Lee Drumm Maness and Florence Velma Drumm Maness. The trial court rejected the opposition and homologated the tableau. Mrs. Lawson has appealed from that judgment.
On July 28, 1969 decedent executed a testament in statutory form. She made a special bequest to two daughters, Carol Lee Drumm Maness and Florence Velma Drumm Maness, in the amount of $14,000 each. The remainder of her property was bequeathed to her three daughters, Carol Lee Drumm Maness, Florence Velma Drumm Maness, and opponent Grace Marion Drumm Lawson, in equal one-third portions.
The decedent survived her husband, the father of the three children named above, and in the husband’s succession decedent was recognized as the owner of her one-half community interest together with an undivided one-third of her husband’s property. The three daughters were each bequeathed an undivided one-third of the remaining two-thirds of their father’s estate.
Prior to the date of decedent’s testament, opponent and her husband borrowed approximately $14,000 from opponent’s mother and father. This sum had not been repaid at the time decedent executed her testament.
On November 10, 1972, approximately six weeks prior to decedent’s death, she *655 and her three daughters sold twelve acres of ground in Jefferson Parish for $420,000, the net amount received being $399,201.57. Four days later decedent opened two checking accounts, one being called “usu-fruct account” and the other “personal account”. On the same day the accounts were opened, she issued two checks from her personal account to Florence Velma Drumm Maness and Carol Lee Drumm Maness, each in the amount of $59,000. On the same day, the decedent also issued a check for $44,355.73 from the usufruct account to opponent, Mrs. Lawson.
Opponent’s opposition is based on the theory that the special legacies of $14,000 to each of her two sisters constituted an attempt by the decedent to make the three daughters equal. She argues that, taking into consideration the fact that she had not repaid the $14,000 loan previously made to her, the November 10, 1972 gift to the other two daughters of a sum approximately $14,000 more than the sum given to the opponent accomplished the purpose for which the special legacies were made, thereby revoking the special legacies. Opponent relies on the following facts in support of her revocation argument: (1) the special cash legacies to opponent’s sisters in the amount of $14,000 each; (2) the additional $14,000 given to opponent’s two sisters by decedent on November 14, 1972; and (3) the fact that the decedent issued the check to opponent from the “usufruct account”.
Opponent relies on Civil Code Article 1695 to support her argument that a donation inter vivos prior to the death of the testatrix in approximately the same amount of a special legacy contained in the decedent’s testament tacitly revoked the special legacy. Article 1695 provides:
“A donation inter vivos, or a sale made by the testator of the whole or a part of the thing bequeathed as a legacy, amounts to a revocation of the testamentary disposition, for all that has been sold or given, even though the sale or donation be null, and the thing have returned into the possession of the testator, whether by the effects of that nullity, or by any other means.” LSA-C.C. Art. 1695.
The trial judge interpreted Article 1695 to apply only to the special legacy of a “thing” and not to a special legacy of rr on-ey. The trial court’s interpretation is correct.
The donation inter vivos of a particular thing under the proper circumstances could imply a tacit revocation of a legacy previously made. Upon the alienation of a particular thing the legacy becomes impossible to execute and the intent to revoke would thereby be made obvious. However, cash is a fungible commodity and an alienation thereof does not bear the same implications or characteristics of an alienation of a non-fungible thing. Since money or cash is fungible, by definition it is interchangeable with other cash so that its alienation does not make execution of a legacy of cash impossible and thereby imply an intent to revoke.
Planiol reaches basically the same conclusion in his treatise. In discussing the corresponding article of the Code Napoleon he disposed of the problem of tacit revocation as follows:
“This type of revocation applies only to particular bequests of determined objects.”[1]
The Louisiana Supreme Court has treated the fungible commodity of cash in a similar fashion. In Succession of Simo,[2] the court rejected an argument that particular legacies of cash in a testament were tacitly revoked because the testatrix died leaving no cash. The court summarily rejected the argument as containing “no merit”.
*656 With regard to the issue of the so-called extinction of the motive for the testatrix’s legacy of an extra $14,000 to opponent’s two sisters, there is no merit to opponent’s argument that the extinction of the motive for the legacy implies a change of intent to make the special legacies. In Succession of Cunningham,[3] the Supreme Court held a legacy in favor of a wife was not revoked when she obtained a divorce after the bequest was made, and rejected the contention of certain heirs that this change of circumstances created a reasonable presumption of the decedent’s intention to change his bequest. The court in this case stated:
“A change of intention of the testator from that expressed in his will must be made by the testator. The court cannot presume a change of intention for him, when he has done no act which supposes a change of will.”
In Succession of Rusha,[4] the Supreme Court stated the proposition as follows:
“Testamentary dispositions can be made only in writing in the form and manner prescribed by law for wills. Hence testamentary dispositions can never be established, as such, by any amount of parol evidence as to the verbally declared intentions of the deceased. And it is but one step from the explaining of a written testamentary disposition by proof of the verbal declarations of the testator, to the establishing of a verbal testamentary disposition-, . . .”
It is therefore clear that the oral testimony offered during the trial should in no way be used to alter or interpret the clear and unambiguous bequest contained in the testament now before us.[5]
 In the present case the testatrix made no revocation, express or tacit, of the special bequest of $14,000 to each of her two daughters. The bequests were for fungible items, equivalent amounts of which can be substituted with no implication of an intent to revoke. The testatrix left sufficient funds to execute the bequests and there is no evidence to indicate in any way, other than through innuendo and coincidence, that revocation was intended. To hold otherwise would result in a judicial confection of the decedent’s will. To allow clear and unambiguous provisions of a will to be amended by implication or by the heirs’ interpretation of the decedent’s motive would be a destruction of the traditional duty of a court to give effect to the will of a deceased person after his demise.
For the reasons assigned, the judgment appealed from is affirmed.

AFFIRMED.

LEMMON, J., concurs with written reasons.

. 3 Planiol, Traité Elementaire de Dorit Civil, § 2843(2).

. 205 La. 592, 17 So.2d 889.

. 142 La. 701, 77 So. 506, 510.

. 158 La. 74, 103 So. 515, 516.

. See also 3 Planiol Traité Elementaire de Droit Civil, § 2843, footnote 262: “But a tacit revocation could not result from material facts merely leading to an inference that the testator intended to revoke his disposition.”